**The Honorable John C. Coughenour**

UNITED STATES DISTRICT COURT WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

| | |
|---|---|
| ELSIE G. COLLAZO, | **NO. CV 13-00892 JCC** |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| BALBOA INSURANCE COMPANY, an insurance company, | |
| Defendant. | NOTE ON MOTION CALENDAR: 3/14/14 |

## I. INTRODUCTION

This is a bad faith insurance case arising from an accidental house fire at the home of Plaintiff Elsie Collazo ("Collazo"). Defendant Balboa Insurance Company ("Balboa") paid only ten (10) percent of the cost of repairing the fire damage to Collazo's home. It is now nearly four years after the fire and the majority of the damage remains unrepaired.

Collazo was the borrower of a reverse mortgage and, at the time of the fire, her house was protected by a lender-placed insurance policy issued by Balboa. That policy identified Collazo's mortgage company as the "named insured" and provided that the borrower, Collazo, was an "additional insured" for the amount that a loss exceeded her mortgage debt. Her debt was

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 1

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

$45,500 at the time of the fire. The full cost of repairing the fire damage has been estimated to be about $348,600, which is $303,100 more than Collazo's debt. This means that Collazo was an insured for $303,100 of the repair costs, or $231,500 after the application of the policy's coverage limits.

Balboa never hired a licensed restoration contractor to evaluate the damage and no Balboa employee ever inspected the loss. Instead, Balboa unilaterally determined that the repairs could be done for just $45,563 and paid a total of $36,900 towards that cost. Collazo repeatedly notified Balboa that its payment was insufficient and that she had been unsuccessful in repairing the house with that money.

Collazo demanded that Balboa participate in an alternative dispute resolution process called an "appraisal" pursuant to the terms of the insurance policy. Balboa agreed and named its representative to the appraisal panel. The appraisers met and worked on the loss for more than three months. Subsequently, Balboa changed its position, cancelled its scheduled inspection of the property, and withdrew from the appraisal process. Balboa has taken the position that it did not owe Collazo a duty of good faith and that she did not have the right to institute the appraisal clause.

## II. RELIEF REQUESTED

Collazo respectfully requests that the Court make the following findings:

1) That Balboa owed a duty of good faith to Collazo and she has standing to assert claims for Balboa's violations of the insurance claim handling statutes and regulations.

2) That Balboa breached its duty of good faith and violated the Washington Insurance Fair Conduct Act.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 2

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

3) That Collazo the right to demand the appraisal process and/or that Balboa was estopped from withdrawing from the appraisal process.

4) That the Court instruct Balboa to resume the appraisal process and that the Court select either Judge Steve Scott (Retired) or insurance professional David Mandt to be the umpire. In the alternative, Plaintiff requests that the Court find Balboa's withdrawal from the appraisal process constituted a default and that the Court determine the cost of repairs to be $348,600.

### III. FACTS

Collazo owns a home located at 3318 North 27th Street, Tacoma, Washington. (Declaration of Elsie Collazo at ¶ 2.) On May 21, 2010, Collazo's home caught fire after her four-year-old grandson lit a match in her bedroom. (*Id.* ¶ 3.) The fire spread rapidly and the heat and pressure caused the windows to explode out of the second-floor. (*Id.* ¶ 4.) That explosion launched shards of glass onto a lawn that was three houses away. (*Id.* ¶ 4.) Fire, smoke, and water damaged both the interior and exterior of the entire house. (Declaration of Joel Hanson, Exhibit A, page 64.) The damage affected the walls, ceilings, and floors, along with the exterior trim, sheathing, and siding. (*Id.*, page 64.) Large amounts of water were used to extinguish the fire. (*Id.*, page 64.) Photos taken after the fire confirm this fire, water, and smoke damage. (Hanson Decl. Ex. B.)

At the time of the fire, Collazo's home was insured by a policy with Balboa. (Collazo Decl. ¶ 6-7.) Collazo was the borrower of a reverse mortgage and her lender, Financial Freedom, charged Collazo directly for the Balboa policy premium. (Hanson Decl. Ex. C.) Collazo paid $2,424 a year for the Balboa insurance policy. (Hanson Decl. Ex. C.) Balboa's policy provided:

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 3

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

> The mortgagor of the property covered hereunder, hereinafter referred to as the 'Borrower,' shall be considered an <u>additional insured</u> with respect to any residual amounts of insurance over and above the insurable interest of the Insured in said property.

(Hanson Decl. Ex. D at page BAL 081.) (Emphasis added.) Accordingly, Collazo was an additional insured for the amount that the cost of repairs exceeded her mortgage debt. Financial Freedom was the "Named Insured", Collazo was the "Borrower" and the policy limits were $277,067 for a loss. (*Id.* at BAL 071.) At the time of the fire, May 21, 2010, Collazo owed Financial Freedom $45,550.10. (Hanson Decl. Ex. E, page 2 of 3.) This amount constituted Financial Freedom's "insurable interest" under the policy. The full cost of repairs has been estimated to be approximately $348,600. (Hanson Decl. Ex. A, page 63.) However, due to the policy limits, only $277,067 of that repair cost was covered. By subtracting Financial Freedom's insurable interest, $45,550.10, from the policy limits, $277,067, we arrive at approximately $231,500 as the "residual" amount of insurance of above the insurable interest.

After the fire, Collazo called Financial Freedom and they notified Balboa. (Collazo Decl. ¶ 8-9.) Balboa adjusted the loss directly with Collazo. (*See id.*) Balboa assigned employee Glenn Gauthreaux to handle Collazo's claim. Gauthreaux hired Dean Perryman of J. Walling Associates[1] to serve as an "independent adjuster", which is sometimes referred to as an "IA". On June 2, 2010, Perryman orally notified Balboa that the cost of repairs would be approximately $60,000, well above Financial Freedom's insurable interest. (Hanson Decl. Ex. F.) Perryman visited Collazo's home, inspected the damage, and prepared an estimate of the cost of repairs.

---

[1] J. Walling Associates also does business as Paragon Claims and Idavada Claims.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 4

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

(Collazo Decl. ¶ 8-9.) His first estimate for the cost of repairs was about $39,000. (Hanson Decl. Ex. G.) Collazo informed Balboa that Perryman's initial estimate overlooked two entire rooms and missed damage throughout the house. (Collazo Decl. ¶ 8-9.) Perryman inspected the house again and made some corrections, but his corrections were incomplete. (Collazo Decl. ¶ 8-9.) His final estimate was $45,563 for the "replacement cost" and $43,546 for the "actual cash value" of the loss. (Hanson Decl. Ex. H.) Despite Collazo's complaints that this estimate was still incomplete, Perryman made no further corrections. (Collazo Decl. ¶ 8-9.)

Balboa's records indicate it paid Collazo and Financial Freedom approximately $36,900 for the cost of repairs. (Hanson Decl. Ex. I.) The payment based on the first estimate was $30,920 and supplemental payment was made for $5,985. (*Id.*) If Balboa had followed Perryman's final written estimate the total payments should have been $43,296, which was the actual cash value (or "ACV") in his estimate minus the policy's $250 deductible.[2] (Hanson Decl. Ex. H.) Balboa failed to pay that amount.

Collazo repeatedly complained to Balboa that the amount it paid was not enough for the repairs. (Collazo Decl. ¶ 11.) At least three contractors inspected that damage and told her it

---

[2] Like most homeowner insurance policies, the subject policy required immediate payment for the "actual cash value" of the loss followed by a supplemental payment upon the completion of the repairs. This supplemental payment would be for the difference between the actual cash value and the full "replacement cost" incurred while doing the repairs. (Hanson Decl. Ex. D at BAL 088-89.) This difference between the replacement cost and the actual cash value is often referred to as the "withheld depreciation."

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 5

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

would cost as much as $170,000.[3] (Collazo Decl. ¶ 11.) A lower cost of $75,000 might be possible if a contractor "cut corners" during the repairs. (Collazo Decl. ¶ 11.)

Collazo is 69 years old and she could not afford to pay for the repairs using her own money. (Collazo Decl. ¶ 17.) Without sufficient funds to do the repairs, Collazo recruited her family members to assist her. (Collazo Decl. ¶ 12.) They used cheap materials to do basic repairs to the living room and other areas of the house. (Collazo Decl. ¶ 12.) But the majority of the repairs were never completed and none of her family members are experienced with the unique field of fire restoration. (Collazo Decl. ¶ 12-15.)

Collazo continued to call Perryman and Gauthreaux to inform them that she was unable to complete the repairs with the funds provided, but they refused to pay any more. (Collazo Decl. ¶ 16.) Despite Collazo's disagreement with Perryman's evaluation and her repeated requests for additional money, Gauthreaux never inspected the damage himself. (Collazo Decl. ¶ 9.) Eventually, Perryman and Gauthreaux stopped returning Collazo's calls. (Collazo Decl. ¶ 16.)

On June 13, 2011, more than a year after the fire, an attorney named Justin Bristol contacted Balboa and informed it that Collazo was unable to afford the necessary repairs. (Hanson Decl. Ex. J.) Bristol was unable to convince Balboa to pay additional funds.

About two years after the fire, Collazo found a different attorney, Michael Watkins, to assist her with her claim. On April 25, 2012, Watkins sent Balboa a letter notifying it that Balboa had violated the Insurance Fair Conduct Act. (Hanson Decl. Ex. K.) Enclosed with that letter was

---

[3] It has been almost four years and Collazo's memory concerning the precise amounts of the estimates is imperfect.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 6

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

an estimate from restoration contractor Bernie Williams of Aspirant Consulting Group. (Hanson Decl. Ex. A.) The Williams estimate was dated April 11, 2012 and predicted the cost of repairs would be $348,605. (Hanson Decl. Ex. A.) In response to the letter from Watkins, Shannon Grizzle, an employee of QBE First, sent a May 14, 2012 letter. (Hanson Decl. Ex. L.) Grizzle explained that QBE had purchased the assets and liabilities of Balboa Insurance Company. (*Id.*) Grizzle stated that the Williams estimate had been forwarded to "the assigned claims representative", presumably Gauthreaux. (*Id.*) Upon reviewing the estimate, Gauthreaux had somehow concluded that it contained repairs unrelated to the loss. (*Id.*) It is unclear how he could make such a determination without ever inspecting the damage himself. (Collazo Decl. ¶ 9.) Grizzle noted that Balboa had "reopened" Collazo's insurance claim for "additional review". (Hanson Decl. Ex. L.)

Balboa then retained Robert May and the law firm of Smith Freed & Eberhard P.C. to assist with the investigation and handling of the claim. On June 13, 2012, May sent a letter explaining that Collazo's claim was still under investigation and he was evaluating the coverage issues. (Hanson Decl. Ex. M.) Balboa requested an opportunity to inspect Collazo's home in order to evaluate her claim that the repairs would cost $348,605. (*Id.*) This was logical because neither Gauthreaux nor any other Balboa employee had yet seen the damage.

Watkins and May spoke by phone and, on July 9, 2012, Watkins sent May a letter that formally initiated the "appraisal" process. (Hanson Decl. Ex. N.) Collazo retained Roger Howson to serve as her appraiser. (*Id.*)

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT  — 7

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

An "appraisal" is a well-established alternative dispute resolution mechanism that is included in all homeowner policies. Appraisal provisions facilitate "fair dealing" and "the prevention of litigation." *Keesling v. Western Fire Ins. Co.*, 10 Wn. App. 841, 846, 520 P.2d 622, 626 (1974). Either party may request that a court confirm an appraisal award. *Id.* at 845. Every Washington fire insurance policy must contain an appraisal provision because Washington law provides that all fire insurance policies must have terms that are identical or more favorable to the insured than the terms contained in the 1943 New York Standard Fire Insurance Policy (the "standard fire policy"). WAC 284-20-010. The standard fire policy provides:

> Appraisal. In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

(Hanson Decl. Ex. O, lines 123-40.) Under Washington law, if a fire insurance policy does not contain terms that are at least as favorable to the insured, those terms must be modified to be equally favorable to the standard fire policy. WAC 284-20-010. For Collazo's home, Balboa's policy provided:

> **Appraisal**
> If **you** and **we** fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, **you** or **we** may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**a.** Pay its own appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally, except that each party shall bear its own voluntarily incurred expenses including, but not limited to, attorneys' fees and expert witness fees.

(Hanson Decl. Ex. D. at BAL 089.)[4] Accordingly, under the Washington's standard policy and under Balboa's policy, each party was required to name an appraiser and attempt to agree on an umpire who could resolve any disagreements between the appraisers.

After Collazo initiated the appraisal process, Balboa attorney Courtney Robinson sent an August 13, 2012 letter naming David Stewart as Balboa's appraiser and confirming Balboa's intention to participate in the appraisal process. (Hanson Decl. Ex. P.)

On September, 4, 2012, Howson visited Collazo's house with Williams and inspected the damage. (Hanson Decl. Ex. Q at page 2 of 10.) On October 22, 2012, Howson and Stewart met and discussed the appraisal process. (*Id.* at 4 of 10.) The appraisers set a tentative date for Stewart to physically inspect the damage with Howson. (*Id.* at 4 of 10.) Stewart was unable to

---

[4] The policy also contained a second, similar appraisal provision. (Hanson Decl. Ex. D. at BAL 098.)

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 9

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

agree to an umpire with Howson because he was waiting for permission from Balboa's attorney, Robinson. (Hanson Decl. Q at page 6 of 10.) On November 19, 2012, the day before the scheduled inspection, Stewart's office emailed Howson and cancelled the inspection. (Hanson Decl. Ex. R.) Howson then met with Stewart and Robinson and learned that Balboa was reconsidering whether it wanted to participate in the appraisal process. (Hanson Decl. Ex. Q. at page 6 of 10.) Balboa then stopped all communications concerning the appraisal and the claim. On March 5, 2013, which was 86 days later, Howson sent an email to Stewart and his assistant, Rick Wade, asking when the appraisal would resume. (Hanson Decl. Ex. R.) Balboa remained silent. The three-year statute of limitations date was just a few months away and, on April 16, 2013, Collazo filed this lawsuit.

Collazo now owes Howson $250 for every hour that he worked on the appraisal, including numerous telephone calls and meetings. (Hanson Decl. Ex. Q.)

On November 19, 2013, Collazo took the deposition of Balboa's designated representative, Kyle Richmond, concerning the events of the claim and the appraisal. (Hanson Decl. Ex. S, Richmond Deposition at 13; and Ex. T.) Richmond testified that he was unaware whether Balboa had ever spoken to Williams about his estimate for $348,000. (Richmond Dep. 64.) He acknowledged that Balboa had never hired a licensed contractor or an engineer to assist with evaluating the cost of repairs. (Richmond Dep. 55.) He denied that Balbao had ever named an appraiser or agreed to participate in the appraisal process. (Richmond Dep. 64-65.) He could not identify the person who was in charge of the claim after May 11, 2012. (Richmond Dep. 84.) That period of time includes the reopening of the claim, Balboa's request to inspect the property,

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 10

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

the appraisal process, and Balboa's cancellation of both the inspection and the appraisal. Balboa has completely redacted all of its diary notes concerning the appraisal process. (Hanson Decl. Ex. U.)

Almost four years have passed since the fire. Collazo and her family are still living in the fire-damaged house. (Collazo Decl. ¶ 18.) None of the three bedrooms on the second floor have been fully repaired. (Collazo Decl. ¶ 13.) Subfloors, sheetrock, and ceilings in the first, second, and third floors still need to be replaced. (Collazo Decl. ¶ 13.) Collazo and her family are not fire-restoration contractors and it is unlikely they were able to locate and repair all the smoke damage and mold that may be hidden in the walls. (Collazo Decl. ¶ 12-15.) Balboa never arranged for the affected areas to be dried, which means it is almost certain that mold has grown inside the walls and floors. (Hanson Decl. Ex. A at page 64.) Collazo's main source of heat, a pellet stove, was also damaged and has not yet been repaired. (Collazo Decl. ¶ 14.)

## IV. ARGUMENT

### A.   Standard for Summary Judgment

A party is entitled to summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view the evidence and draw reasonable inferences from the evidence in the light most favorable to nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).   To avoid summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 11

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

1    Fed. R. Civ. P. 56(e).

2        **B.    Collazo Was a Third-Party Beneficiary of the Contract**

3        The subject insurance policy contract provided coverage of $277,067[5] and explicitly stated

4    that Collazo, the borrower, was an "additional insured" for any residual amount above Financial

5    Freedom's $45,500 interest in the property. That residual amount was about $231,500. Under

6    Washington law, a person is a third-party beneficiary to an insurance contract if performance of

7    the contract would necessarily and directly benefit that party. *Postlewait Const., Inc. v. Great*

8    *American Ins. Companies*, 106 Wn.2d 96, 99-100, 720 P.2d 805, (1986) (lessor of cranes was not

9    intended third-party beneficiary of lessee's insurance policy and could not directly sue insurer for

10   breach of contract where lessor was not named as additional insured or as loss payee on lessee's

11   policy). The test is an object test and the intent of the parties is determined by construing the

12   terms of the contract as a whole. (*Id.*) To illustrate, Washington courts have found that a

13   passenger injured in an automobile accident is a third-party beneficiary if passenger injuries are

14   covered under the terms of the driver's insurance policy. *See, e.g., Escalante v. Sentry Ins. Co.*,

15   49 Wn. App. 375, 388, 743 P.2d 832 (1987), review denied, 109 Wn.2d 1025 (1988), overruled

16   on other grounds by *Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn.2d 766, 15 P.3d 640

17   (2001).

18       Here, it cannot be disputed that performance of the Balboa insurance contract would

19   necessarily and directly benefit Collazo. Collazo owned the house and would benefit from any

20   repairs paid for by Balboa. Further, the policy provided her with $231,500 of coverage in

21   addition to Financial Freedom's interest in the property. Finally, the policy explicitly designated

22

23   [5] The policy provided an additional ten (10) percent of that coverage limit for costs arising due to
24   ordinance or law. (Hanson Decl. Ex. D at BAL 085.)

25

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 12

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

that Collazo was an additional insured. The interpretation and construction of an insurance contract is a matter of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424 (2002). This Court should find, as a matter of law, that Collazo was a third-party beneficiary of the subject insurance contract.

### C.   Balboa Owed a Duty of Good Faith to Collazo and She Has Standing to Sue Balboa for Violations of the Insurance Statutes and Regulations

Washington law provides that a third-party beneficiary of an insurance contract is entitled to the same duty of good faith and legal remedies that apply to a named insured. *Escalante*, 49 Wn. App. at 384-390. In *Escalante*, an automobile insurance policy provided coverage for any passenger injured in a covered vehicle. *Id.* at 377. The court found that the insurance company had the same obligations to an injured passenger as it had to the named insured, despite the fact that the passenger was not named in the policy. The *Escalante* decision established that such third-party beneficiaries are entitled to the same duty of good faith as the named insured. *Id.* at 385. Such third-party beneficiaries are also entitled to protection under the Consumer Protection Act and the Washington Administrative Code claims handling regulations set forth in WAC 284-30. *Id.* at 386-390. Under the rationale of *Escalante*, a third-party beneficiary also has standing assert a claim for a violation of the IFCA, RCW 48.30.015. This was not addressed in *Escalante* because the IFCA did not become law until 2007.

*Escalante* has become well-settled law on this issue. The Washington Supreme Court has repeatedly cited it with approval and has relied on it when ruling that a CPA action may be brought by plaintiffs even when they were not a party to the underlying business transaction. *Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 312, 858 P.2d 1054 (1993); *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 41, 204 P.3d 885 (2009).

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

Collazo was an additional insured under the policy. This Court should find that Balboa owed her a duty of good faith. This Court should also find that she has standing to assert her claims against Balboa for violations of the IFCA, the CPA, and for her CPA claims arising from WAC claim handling violations.

### D.    Balboa Breached its Duty of Good Faith

To this day, no Balboa employee has ever inspected the damage to Collazo's home. Balboa ignored Collazo's repeated complaints that Perryman's estimate was insufficient and Balboa never retained a licensed contractor to evaluate the cost of repairs. Upon receiving Williams' estimate for $348,000, Balboa reopened the claim and requested the opportunity to inspect the damage. The parties then began an appraisal process and scheduled a date for Balboa's appraiser to inspect the property. But Balbao stopped the appraisal process and instructed its appraiser not to inspect the damage. Balboa then ended all communication and never asked for another inspection date.

In addition, Balboa failed to pay the full actual cash value of Perryman's final estimate. Balboa appears to have taken the position that Perryman's estimate could not possibly be wrong, which contradicts Balboa's decision to not pay the full amount in his estimate.

An insurer breaches its duty of good faith if its actions were unreasonable, frivolous, or unfounded. *Mutual of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903, 916 (2007). Further, the relationship between an insurer and its insured should not be adversarial. An insurer acts in bad faith when it places its own interests above the interests of its insured. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386 (1986). A breach of the duty of good faith is the same thing as the tort of bad faith. 105 Wn.2d at 385; 161 Wn.2d at 915.

Balboa's decision to reject the $348,000 estimate and ignore Collazo's complaints without

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

ever inspecting the property itself was unreasonable, frivolous, and/or unfounded. Balboa's failure

to pay the full amount of the actual cash value in Perryman's estimate was also unreasonable,

frivolous, and/or unfounded. Balboa's conduct also placed its own interests above Collazo's. This

Court should find that Balboa breached its duty of good faith as a matter of law.

**E.      Balboa Violated the Insurance Fair Conduct Act**

The IFCA provided:

> Any first party claimant to a policy of insurance who is unreasonably
> denied a claim for coverage or payment of benefits by an insurer may
> bring an action in the superior court of this state to recover the actual
> damages sustained[.]

RCW 48.30.015. Collazo met the definition of a "first party claimant" because she was

"asserting a right to payment as a covered person under an insurance policy or insurance contract

arising out of the occurrence of the contingency or loss covered by such a policy or contract."

RCW 48.30.015 (4). Balboa violated the plain language of this statute when it unreasonably

denied the full payment of the cost of repairing the damage to her home. Balboa acted

unreasonably by ignoring Collazo's complaints that she was unable to repair the property with

the money provided, failing to personally inspect the property, failing to communicate with

Williams about the conclusions in his estimate, and cancelling its plans to inspect the damage

and compare it with the Williams estimate.

**F.      Collazo Had the Right to Demand an Appraisal**

The subject insurance policy contained two appraisal provisions. Balboa has made the

argument that Collazo did not have the right to demand appraisal because the Borrower was not

explicitly mentioned in either appraisal provision. But this argument must fail for two

independent reasons. First, Washington law required that all fire insurance policies have an

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

appraisal provision to protect all the insureds, including the "additional insured" Borrower. Second, even if Washington did not have such a law, Balboa's interpretation of the Borrower's rights is overly narrow.

Washington law requires that all fire insurance policies use a form that includes an appraisal provision. WAC 284-20-010 ("Standard fire policies") provided:

> (3) Except for the provisions of the next succeeding three paragraphs, <u>no company shall issue any basic contract of fire insurance covering property or interest therein in this state other than on the form known as the 1943 New York Standard Fire Insurance Policy</u>, herein referred to as the "standard fire policy": Provided, however, That such form shall be modified to conform to RCW 48.18.290 with respect to the number of days' notice of cancellation required. In addition, such form shall be modified as necessary to conform to WAC 284-20-020 with respect to inception and expiration times. Such modifications may be by endorsement.

> (a) Insurers issuing a standard fire policy pursuant to this regulation are hereby authorized to affix thereto or include therein a written statement that the policy does not cover loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, all whether directly or indirectly resulting from an insured peril under said policy: Provided, however, That nothing herein contained shall be construed to prohibit the attachment to any such policy of an endorsement or endorsements specifically assuming coverage for loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination provided such assumption clause has been filed with and approved by the commissioner in accordance with RCW 48.18.100.

> (b) The pages of the standard fire policy issued pursuant to this regulation may be renumbered and the format rearranged for convenience in the preparation of individual contracts, and to provide space for the listing of rates and premiums for coverages insured thereunder or under endorsement attached to or printed thereon, and such other data as may be conveniently included for duplication on daily reports for office records.

> (c) <u>As an alternative form, a form written in clear, understandable language, which provides terms, conditions and coverages not less favorable to the insured than the "standard fire policy," may be used. Such alternative form may be incorporated in or integrated within a form providing other or additional coverages, as, for example, a homeowners policy</u> or a special multiperil policy.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 16

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

1

2

> The intent of this subsection is to permit understandable plain language policies and package policies without diminishing any rights an insured would have under the 1943 New York Standard Fire Insurance Policy.

3

4

5

6

> (d) By use of such alternative form, an insurer certifies that it is not less favorable to the insured than the "standard fire policy." If, in the adjustment of claims, any provision of the "standard fire policy" applicable to such claims is found to be more favorable to the insured than the alternative form used, then provisions of the "standard fire policy" shall govern.

7

(Emphasis added.) The 1943 New York Fire Insurance Policy had an appraisal provision that

8

allowed the "insured" to demand appraisal. (Hanson Decl. Ex. O, lines 123-40.) There was no

9

distinction between a "named insured" and an "additional insured", all that matters is that

10

Collazo was an insured. Accordingly, under Washington law, Collazo was entitled to demand

11

appraisal under the terms of that standard fire policy. To the extent that Balboa's policy did not

12

give Collazo that right, it violated WAC 284-20-010 and the terms of the standard fire policy

13

supersede Balboa's policy pursuant to WAC 284-20-010 (d). This Court should find that, as a

14

matter of law, Collazo had the right to demand appraisal.

15

By arguing that Collazo, an insured under the policy, did not have the right to demand

16

appraisal, Balboa is effectively arguing that its policy did not comply with the terms of WAC

17

18

284-20-010. Balboa's withdrawal from the appraisal process and its failure to comply with WAC

19

284-20-010(d) is another example of Balboa's breach of the duty of good faith.

20

Even if WAC 284-20-010 did not exist, the terms of Balboa's insurance policy were

21

ambiguous concerning whether the Borrower could demand appraisal. It should be assumed that,

22

as an additional insured, the Borrower had substantially the same rights and obligations as the

23

named insured. When a policy term is capable of two constructions, it must be construed in favor

24

25

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

of the insured. *Shotwell v. Transamerica Title Ins. Co.*, 91 Wn.2d 161, 167 (1978). Where a

policy is ambiguous on an issue, that ambiguity must be construed in favor of the insured.

*Panorama Vill. Condo. Owners Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 137 (2001). The

terms of a policy are construed as the average person buying insurance would interpret them, and

are given a fair and reasonable construction. *Overton,* 145 Wn.2d at 424. Insurance appraisal is

an alternative dispute resolution mechanism that exists to facilitate fair dealing and prevent

litigation concerning the value of a loss. *Keesling*, 10 Wn. App. at 846. It would be unreasonable

to interpret the policy in such a way that prevented Collazo, an additional insured, from utilizing

the appraisal provision to resolve a dispute.

For the reasons set forth above, the Court should find that Collazo had the right to demand

appraisal. The Court should also find that Balboa's withdrawal from the appraisal process

constituted its breach of the duty of good faith because it violated WAC 284-20-010(d).

### G.   Alternatively, Balboa Was Estopped from Withdrawing from the Appraisal Process

Even if Collazo did not have the right to demand appraisal under the terms of the policy or

the requirements of WAC 284-20-010, Balboa was estopped from withdrawing from the

appraisal process once it had begun participating in that process. It is undisputed that Balboa had

the right to institute the appraisal process and Balboa exercised that right by naming its appraiser

and participating in the appraisal process. Collazo was charged significant fees by her appraiser

due to her reliance on Balboa's apparent willingness to participate in the appraisal process.

The five elements of promissory estoppel are: (1) a promise (2) which the promisor should

reasonably expect will cause the promisee to change position and (3) which actually causes the

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

promisee to change position (4) in justifiable reliance on the promise, so that (5) injustice can be avoided only by enforcement of the promise. *Riverview Community Group v. Spencer & Livingston*, 173 Wn. App. 568, 295 P.3d 258 (2013) citing *Shaw v. Hous. Auth.*, 75 Wn. App. 755, 761, 880 P.2d 1006 (1994). In addition to promissory estoppel, there also exists the principle of estoppel by silence. "(P)romissory estoppel . . . is based upon the same equitable principles as is estoppel by silence. In the one case a promise is made with the intention that it be acted upon by the promisee; in the other, a person has been silent on some occasion when he should have spoken." *Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wash.2d 126, 133, 443 P.2d 544 (1968). "[A]bsent fraud or misrepresentation, estoppel runs in favor only of those who have reasonably relied on another's conduct or declarations." *Leonard v. Wash. Employers, Inc.*, 77 Wn.2d 271, 281, 461 P.2d 538 (1969).

Here, Balboa was equitably estopped from withdrawing from the appraisal process. "The doctrine of equitable estoppel rests on the principle that a person shall not be permitted to deny what he has once solemnly acknowledged." *Nickell v. Southview Homeowners Ass'n*, 167 Wn. App. 42, 53-54, 271 P.3d 973 (2012). "Where a person, by his acts or representations, causes another to change his position or to refrain from performing a necessary act to such person's detriment or prejudice, the person who performs such acts or makes such representations is precluded from asserting the conduct or forbearance of the other party to his own advantage." (*Id.*) "Before we can apply estoppel in pais or equitable estoppel, three things must occur: (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

1  resulting from allowing the first party to contradict or repudiate such admission, statement, or

2  act." (*Id.*)

3  Balboa named Stewart as its appraiser, told Stewart to meet with appraiser Howson,

4  scheduled a cite inspection with both appraisers, and was engaged in the appraisal process from

5  July 9, 2012 through November 19, 2012, a total of more than four months. Balboa's position that

6  Collazo had no right to the appraisal process is inconsistent with those actions. Collazo has

7  incurred appraiser fees of $250 per hour due to her reliance on Balboa's participation in the

8  appraisal process. Collazo also refrained from filing a lawsuit due to her reliance on Balboa's

9  participation in the appraisal. As a matter of law, the Court should find that Balboa was estopped

10  from withdrawing from the appraisal process.

11  **H.   The Court Should Select an Umpire and Order Balboa to Participate in the**
       **Appraisal Process or, Alternatively, Issue a Default Appraisal Award**

12

13  Plaintiff requests that the Court instruct Balboa to participate in the appraisal process and

14  that the Court select an umpire pursuant to the subject appraisal provision.[6] Plaintiff requests that

15  the Court name either Former King County Superior Court Judge Steve Scott or David Mandt as

16  the umpire. Plaintiff's appraiser has confirmed their availability to serve as the umpire in this

17  matter. Both Judge Scott and Mandt have served as umpires on numerous property losses. Mandt

18  is an insurance professional with decades of experience adjusting property losses.

19  Alternatively, Plaintiff requests that the Court find Balboa has defaulted on the appraisal

20  process and waived its right to dispute the accuracy of the Williams estimate. Appraisal

21

22

23  [6] The appraisal provisions in the standard fire policy and Balboa's insurance policy all allow this
    Court to select an umpire.

24

25

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT — 20

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

provisions exist to "provide a plain, inexpensive and speedy determination of the extent of the loss." *Keesling*, 10 Wn. App. at 845. "The authority and control over the ultimate disposition of the subject matter remains with the courts." (*Id.*) This Court may use its discretion to render a default judgment against Balboa for its failure to participate in the appraisal process. Plaintiff requests that the Court render a default appraisal judgment in the amount of the Williams estimate, $348,605, subject to the policy limits and other conditions of the policy. This will fulfil the purpose of the appraisal process and will finally provide Collazo with a speedy determination of the amount of her loss.

DATED this 18th day of February, 2014.

JOEL B. HANSON, ATTORNEY AT LAW, PLLC

_/s/ Joel Hanson_____
Joel B. Hanson, WSBA #40814
Attorney for Plaintiff

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

1

2

3

4

5

6

7

**The Honorable John C. Coughenour**

UNITED STATES DISTRICT COURT WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

| | |
|---|---|
| ELSIE G. COLLAZO, | **NO. CV 13-00829 JCC** |
| Plaintiff, | |
| v. | **DECLARATION OF ELSIE "GRACE" COLLAZO** |
| BALBOA INSURANCE COMPANY, an insurance company, | |
| Defendant. | |

I, Grace Collazo, declare as follows:

1.      I am over 18 years of age and otherwise competent to make this Declaration, which is based on my personal knowledge and the documents enclosed herein.

2.      I own a house located at 3318 North 27th Street, Tacoma, Washington.

3.      On May 21, 2010, my home caught fire after my four-year-old grandson lit a match in my bedroom. I am in the process of adopting my grandson and I raise him as my son.

4.      The fire spread rapidly and we rushed out of the house. While we were outside, the upstairs windows exploded due to the pressure and heat. Glass landed on the neighbor's yard three houses down the street.

DECLARATION OF ELSIE COLLAZO — 1

NO. CV 13-00829 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

5.    Most of my belongings and all of my clothing was lost in the fire.

6.    Before the fire, I had gotten a reverse mortgage with Financial Freedom. They charged me for insurance for my house.

7.    When I remembered that I had been charged for insurance, I called Financial Freedom. Balboa called me about a week later.

8.    Balboa sent Dean Perryman to look at my house. Mr. Perryman's first inspection and estimate missed two entire rooms, many windows, and many other items. He had to come out and inspect the house again and correct his estimate. I told him his second estimate also missed items but he did not correct that.

9.    I also spoke on the phone with Glenn Gauthreaux, who works for Balboa, about my insurance claim. Mr. Gauthreaux never visited my home.

10.    Balboa paid me a total of about $24,000 to do the repairs. Another $5,000 is in the bank and will not be disbursed until the repairs are almost finished. But they are not close to being done.

11.    I repeatedly told Balboa that I could not do all the repairs for the amount they paid. I had two contractors from Seattle and a contractor from Federal Way inspect my house and make an estimate. They said it would cost way more than what Balboa paid. One thought he could maybe do it for as low as $75,000 if he cut corners. Another said it would cost around $170,000. I told this to Mr. Perryman, but they did not change their estimate or pay more money.

12.    I did the best I could to do the repairs myself with the help of my family. I got help from two of my sons, who are in the construction industry but do not normally do fire

DECLARATION OF ELSIE COLLAZO — 2

NO. CV 13-00829 JCC

JOEL D. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

restoration. They helped to do some basic repairs to some of the house, especially the ground floor living room. We used bargain "whoops" paint and other cheap materials to repair some of the ground floor and paint the outside of the house.

13.     The third-floor is still completely unrepaired. My bedroom, where the fire started, is repaired except for the floor. and other things. The other bedrooms on the second floor have not yet been completely repaired. We painted over most of the smoke stains. We still need to replace subfloors, sheetrock, doors, and ceilings in the dining room, the second floor, and the third floor.

14.     The fire department used a lot of water to put out the fire. Some of the water damaged my pellet stove, which is the main source of heat in the house. That stove still needs to be repaired or replaced.

15.     The water from the firefighters caused mold to grow. We were able to tear out some mold that was growing in the front of the living room, but we don't know where mold might have grown in other walls and hidden places where there was water. I have been told that the ground-floor probably has mold growing in the walls and floor because we did not know how to search for mold and remove it.

16.     I told Mr. Perryman and Mr. Gauthreaux that I had spent the money on repairs and there was still more work to do, but they refused to pay any more. I kept calling them and they said the matter was closed and they stopped returning my calls.

17.     I could not afford to pay for the repairs myself. I am 69 years old and I live on a fixed income. I was employed as a bus driver but I can no longer work because my knee was badly injured when another bus hit mine.

DECLARATION OF ELSIE COLLAZO — 3

NO. CV 13-00829 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

18.     One of my sons, his son, and my adopted son are all currently living with me in the house. We are living in the damaged rooms because we need the space.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct:

Signed at _Tacoma_ Washington, this __7__ day of __Feb__, 2014.

_Grace Collazo_
Elsie "Grace" Collazo

DECLARATION OF ELSIE COLLAZO — 4

NO. CV 13-00829 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

| ELSIE G. COLLAZO, | NO. CV 13-00892 JCC |
|---|---|
| Plaintiff, | |
| v. | **DECLARATION OF JOEL HANSON IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| BALBOA INSURANCE COMPANY, an insurance company, | |
| Defendant. | |

I, Joel Hanson, declare as follows:

1.      I am over 18 years of age and otherwise competent to make this Declaration, which is based on my personal knowledge and the documents enclosed herein.

2.      I am one of the attorneys who represents the plaintiff in this matter.

3.      Attached as Exhibit A is a true and correct copy of an estimate of the damage prepared by Bernie Williams of Aspirant Consulting Group.

4.      Attached as Exhibit B is a true and correct copy of selected pages from Balboa's claim file containing photos of the damage taken by Dean Perryman of J. Walling Associates. The pages are labelled BAL 221-29, 233, 234, 236, 239, 240, 241, and 245.

DECLARATION OF JOEL HANSON — 1

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

5.     Attached as Exhibit C is a true and correct copy of a December 14, 2009 letter from Financial Freedom to Ms. Collazo. It is labelled BAL 069-070.

6.     Attached as Exhibit D is a true and correct copy of the subject insurance policy provided in Balboa's claim file. It is labelled BAL 071-104.

7.     Attached as Exhibit E is a true and correct copy of a loan payoff statement and history of Collazo's debt with Financial Freedom.

8.     Attached as Exhibit F is a true and correct copy of a page from Balboa's diary entries for the claim. It is labelled BAL 066.

9.     Attached as Exhibit G is a true and correct copy of a summary of Dean Perryman's initial estimate. It is labelled BAL 209.

10.     Attached as Exhibit H is a true and correct copy of Mr. Perryman's final estimate. It is labelled BAL 135.

11.     Attached as Exhibit I is a true and correct copy of the two payment records provided by Balboa and labelled BAL 050-51.

12.     Attached as Exhibit J is a true and correct copy of a June 13, 2011 email from Justin Bristol to Dean Perryman.

13.     Attached as Exhibit K is a true and correct copy of a letter from Michael Watkins to Balboa. It is labelled BAL 002-03.

14.     Attached as Exhibit L is a true and correct copy of a May 14, 2012 letter from Shannon Grizzle to Mr. Watkins.

DECLARATION OF JOEL HANSON — 2

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

15.     Attached as Exhibit M is a true and correct copy of a June 13, 2012 letter from Robert May to Mr. Watkins.

16.     Attached as Exhibit N is a true and correct copy of a July 9, 2012 letter from Mr. Watkins to Mr. May.

17.     Attached as Exhibit O is a true and correct copy of the 1943 New York Standard Fire Insurance Policy. It is 165 lines.

18.     Attached as Exhibit P is a true and correct copy of an August 13, 2012 letter from Courtney Robinson to Mr. Watkins.

19.     Attached as Exhibit Q is a true and correct copy of an invoice and billing records provided by Roger Howson.

20.     Attached as Exhibit R is a true and correct copy of a March 5, 2013 email chain between Mr. Howson, David Stewart, and Mr. Stewart's office manager, Rick Wade.

21.     Attached as Exhibit S is a true and correct copy of selected pages from the deposition transcript of Kyle Richmond, who served as the testifying representative of Balboa. Those pages include 13, 55, 64-65, and 84.

22.     Attached as Exhibit T is a true and correct copy of the October 24, 2013 Amended Notice of Deposition to Balboa pursuant to Rule 30(b)(6).

23.     Attached as Exhibit U is a true and correct copy of internal diary notes produce by Balboa and labelled BAL 265-269.

DECLARATION OF JOEL HANSON — 3

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct:

Signed at Seattle Washington, this 18th day of February, 2014.

Joel Hanson

DECLARATION OF JOEL HANSON — 4

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

| | |
|---|---|
| ELSIE G. COLLAZO,<br><br>Plaintiff,<br><br>v.<br><br>BALBOA INSURANCE COMPANY, an<br>insurance company,<br><br>Defendant. | NO. CV 13-00892 JCC<br><br>[proposed] ORDER GRANTING<br>PLAINTIFF'S MOTION FOR PARTIAL<br>SUMMARY JUDGMENT |

Having reviewed all the materials filed in support and in opposition to Plaintiff's Motion for Partial Summary Judgment, this Court hereby GRANTS Plaintiff's Motion.

The Court finds that Plaintiff Collazo was a third-party beneficiary of the policy and that Defendant Balboa owed her a duty of good faith. The Court finds that Collazo has standing to sue Balboa for violation of the Washington Insurance Fair Conduct Act, violation of the Washington Consumer Protection Act, and violation of Washington Administrative Code regulations to the extent that they may constitute violations of the Consumer Protection Act or the Insurance Fair Conduct Act.

[proposed] ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT — 1

NO. CV 13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

The Court finds that Balboa breached the duty of good faith and unreasonably refused full payment of Collazo's benefit under the policy. The Court finds this violated the Insurance Fair Conduct Act.

The Court finds that Collazo was entitled to demand appraisal under the terms of the policy and Washington law concerning standard fire policies.

The Court instructs Balboa to resume the appraisal process. The Court names Former King County Superior Court Judge Steve Scott as the umpire.

Dated this _____ day of _____, 2014

_____
**The Honorable John C. Coughenour**

Presented by:

JOEL B. HANSON, ATTORNEY AT LAW, PLLC

_____/s/ Joel Hanson_____
Joel B. Hanson, WSBA #40814
Attorney for Plaintiff

[proposed] ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT — 2

NO. CV  13-00892 JCC

JOEL B. HANSON
ATTORNEY AT LAW, PLLC
2825 EASTLAKE AVE E
SUITE 115
SEATTLE, WA 98102
206.412.8765

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| ELSIE COLLAZO, a single woman, | No.  CV 13-00892 JCC |
|---|---|
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| BALBOA INSURANCE COMPANY, an insurance company, | |
| Defendant. | |

Under penalty of perjury under the laws of the state of Washington, I declare that on this

18th day of February, 2014, I electronically filed the foregoing with the Clerk of the Court using the

CM/ECF system with which will send notification of such filing to the following:

Robert May
Smith Freed & Eberhard
111 SW 5th Ave. Suite 4300
Portland, OR 97204
206-576-7575

_Sonia Chakalo_
Sonia Chakalo

CERTIFICATE OF SERVICE — 1

LAW OFFICES OF
MICHAEL T. WATKINS
2825 EASTLAKE AVE. E
SUITE 115
SEATTLE, WA  98102
206/400-6640; FAX: 206/971-5080