1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| ELSIE COLLAZO, a single woman, | ) Case No. 2:13-cv-00892-JCC |
| | ) |
| Plaintiff, | ) **DEFENDANT'S RESPONSE IN** |
| | ) **OPPOSITION TO PLAINTIFF'S** |
| vs. | ) **MOTION FOR PARTIAL SUMMARY** |
| | ) **JUDGMENT** |
| BALBOA INSURANCE COMPANY, an | ) |
| Insurance Company | ) |
| | ) |
| Defendant. | ) |

## I.  INTRODUCTION

Defendant Balboa Insurance Company ("Balboa") files this brief in opposition to

Plaintiff Elsie Collazo's ("Collazo") Motion for Partial Summary Judgment.  In support of

Balboa's Response to Plaintiff's Motion for Summary Judgment, Balboa relies upon the

following points and authorities, the accompanying Declaration of Robert May ("Decl. May"),

and the court record herein.  For the reasons that follow, Plaintiff's Motion should be denied.

## II.  STATEMENT OF FACTS

Plaintiff Elsie Grace Collazo (hereinafter "Collazo") took a reverse mortgage on her

///

///

Page | 1  DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT                                      111i151

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1  house located at 3318 North 27th Street, Tacoma, WA 98407 (the "property").[1] (Decl. May Ex.

2  2). Her lender, Financial Freedom Acquisition, LLC (hereinafter "Financial Freedom"), required

3  that she insure the property. Collazo had not insured her house for several years before taking

4  the reverse mortgage with Financial Freedom. (Decl. May, Ex. 1, 16:19-21). When Collazo

5  failed to provide proof of insurance, Financial Freedom purchased its own insurance policy from

6  defendant Balboa to protect Financial Freedom's interest in the Property. (Decl. May, Ex.2, PLF

7  294, Section 3). Collazo's agreement with Financial Freedom provides as follows:

8
9       If I (Collazo) do not provide you (Financial Freedom) with evidence of insurance
        satisfactory to you or upon your request you may, but are not obligated to, in
10      accordance with Section 6, obtain such insurance **on your own behalf** or on my
        behalf, at your option, **naming you as the insured** or otherwise, at your sole
11      option. **I acknowledge that insurance you obtain in this way may provide less
        protection to me** and may be more expensive that insurance I could obtain.

12  (*Id.*, emphasis added.) At the time Collazo obtained the reverse mortgage on her property, she

13  did not have property insurance. (Decl. May, Ex. 1, 16:10-21). Collazo testified that she had

14  property insurance through Lloyd's of London and Colonial Penn in the past. (*Id.* at 15:8-12).

15      Financial Freedom notified Collazo that it had not received proof of hazard insurance and

16  requested that Collazo provide evidence of hazard insurance coverage on the property. (PLF 218-

17  219). After Collazo failed to obtain property insurance pursuant to the terms of the loan,

18  Financial Freedom purchased its own insurance coverage through Balboa to protect its interest in

19  the property. On December 14, 2009, Financial Freedom provided Collazo with a Certificate of

20  Coverage Placement, which notified Collazo that Financial Freedom purchased coverage

21  effective from November 10, 2009 through November 10, 2010. (Decl. May, Ex. 3). The

22  Certificate of Coverage Placement provides:

23      **This coverage is not homeowner insurance and it provides coverage for
        physical damage to the structure only. The insurance we purchased will pay**
24

25  _____

26  [1]    Collazo denies she ever requested a reverse mortgage from Financial Freedom (Decl. May, Ex. 1, 32:19-23; 42:21 -
    43:16). Collazo testified she wanted to take out a loan, but was given a reverse mortgage instead. (Decl. May Ex. 1, 11:23; 12:6).

Page | 2  DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
           SUMMARY JUDGMENT                                                    111i151

claims made by us as the creditor and may not pay any claims made by you or against you in connection with your home or real and personal property. It provides no additional living expense, flood or earthquake coverage AND DOES NOT INCLUDE LIABILITY COVERAGE AND WILL NOT SATISFY ANY LIABILITY INSURANCE LAW OR FINANCIAL RESPONSIBILITY LAW OF THIS OR ANY OTHER STATE.

The amount of coverage may be less than the value of your home and your real and personal property, and as a result, you may be underinsured. The cost of this insurance may be significantly more than the cost of insurance you can obtain on your own.

(PLF 218-219, emphasis in original).

Enclosed with the correspondence was the Balboa insurance policy, Policy Number 6113-0002. (Decl. May, Ex. 4).

On May 21, 2010, a fire damaged a portion of the property. (Decl. May, Ex. 5). *At the time of the fire, Collazo did not believe that the property was insured, explaining to fire investigators that her limited income precluded her from insuring the property.* (*Id.* at 216).

Balboa received notice of the loss on Friday, May 28, 2010 of the Memorial Day Weekend. (Decl. May, Ex. 6, BAL 068). The claim was promptly assigned to Balboa adjuster Glenn Gauthreaux (*Id.*). Balboa assigned local independent adjuster, Dean Perryman of Paragon Claims, Inc. ("Paragon")[2], to prepare an estimate of the cost to repair the damage. (Decl. May, Ex. 6 at BAL 068; Ex. 7). On Tuesday, June 1, 2010, Mr. Gauthreaux sent written acknowledgment of receipt of the claim for benefits to its insured, Financial Freedom, a copy of which was sent to Collazo. (Decl. May, Ex. 6 at BAL 068; Ex. 8).

Mr. Perryman met with Collazo and her son, Randy Collazo, at the property on June 1, 2010 to inspect the damage and prepare an estimate.[3] (Decl. May, Ex. 9 and 10). Collazo represented that her son Randy is a licensed and bonded contractor and was present to assist in

---

[2]     a.k.a. Idavada Claims, Inc., a.k.a. J. Walling & Associates.
[3]     Collazo asserts that "On June 2, 2010, Perryman orally notified Balboa that the cost of repairs would be approximately $60,000." This inaccurately represents the claim handling. In this matter, $60,000 was set aside as a reserve. A "reserve" is essentially setting aside money to pay what the exposure could be; it is not a rough estimate of damages, but rather an impression of what the potential exposure could be. (Decl. May, Ex. 11, 67:24 - 68:11).

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1  the estimate. (Decl. May, Ex. 1, 50:2-4).  Mr. Perryman took photographs and prepared an

2  estimate that reflected the repairs necessary for damages related to the fire. (Decl. May, Ex. 10).

3  Mr. Perryman noted that there was previous water damage to the house evidenced by unfinished

4  drywall repairs (*Id.* at BAL 220, Photo 1) and pre-existing structural deficiencies evidenced by a

5  "bow" in the living room above the front door (*Id.* at BAL 222, Photo 6).  Mr. Perryman

6  observed that the damage was most severe in the 2nd floor master bedroom area and attic, but

7  there was minimal or no damage to the first floor. (*Id.*)

8      This estimate provided for repair and replacement of fire related damages in all three

9  upstairs bedrooms, the upstairs hallway and bathroom, the attic bedroom, attic hallways and

10 storage rooms, the staircase to the attic, the staircase between the first and second floors on the

11 property, and the living room. (*Id.* at BAL 210-219).  The Replacement Cost Value ("RCV") of

12 the damages was adjusted in the amount of $38,269.45 including tax, and overhead & profit

13 ("O&P"). (*Id.* at BAL 219).  On July 1, 2010, Balboa issued an Actual Cash Value ("ACV")

14 payment to Financial Freedom, as the named insured under the policy, in the amount of

15 $30,920.37. (Decl. May, Ex. 12).  In written correspondence accompanying payment on the

16 claim, Balboa explained the basis for the payment. *Id.*  In that correspondence, it was explained

17 that O&P in the amount of $5,919.48 was withheld and would be issued in the event that a

18 general contractor was used to complete the repairs (*Id.* at BAL 184).  The basis of the first

19 payment is summarized as follows:[4]

| RCV | $30,288.25 |
|---|---|
| O&P (20%) | $5,919.48 |
| Non-recoverable depreciation | ($690.84) |
| Tax (9.3%) | $2,752.56 |
| **NET CLAIM** | **$38,269.45** |
| (O&P withheld, pending use of general contractor) | ($5,919.48) |
| Recoverable depreciation | ($429.60) |
| Deductible | ($1,000.00) |

26  [4]   This chart is offered to address allegations of improper payment contained in Plaintiff's Motion for Partial
Summary Judgment. (Dkt. # 23, 5:9-15 and 14:14-16).

Page | 4  DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT                                                  111i151

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

| ACV PAYMENT #1 | $30,920.37 |
|---|---|

Almost two months later, Collazo contacted Balboa and requested a re-inspection of the property, explaining that the original estimate missed items. (Decl. May, Ex. 6 at BAL 060). Mr. Perryman re-inspected the loss on September 2, 2010 with Collazo, her son Randy and her preferred contractor, Frank & Sons. (Decl. May, Ex. 13). Mr. Perryman discussed the specifications and the scope of the original estimate, re-inspected the loss, and revised the original estimate to include the items discussed with Collazo, her son and their contractor. (Decl. May, Ex. 14). Mr. Perryman added all items requested by Collazo, her son and their contractor. (*Id.*) Based upon the items added to the estimate, a supplemental payment was issued to Financial Freedom on September 28, 2010 in the amount of $5,985.54, reflecting the difference of the revised estimate, less the prior payments. (Decl. May, Ex. 14 and 15). The basis of the supplemental payment is summarized as follows:[5]

| Estimated totals | $35,394.83 |
|---|---|
| O&P (20%) | $6,940.80 |
| Non-recoverable depreciation | ($690.84) |
| Tax (9.3%) | $3,227.47 |
| **NET CLAIM** | **$44,872.26** |
| (O&P withheld, pending use of general contractor) | ($6,940.80) |
| Recoverable depreciation | ($1,326.04) |
| O&P (20%) | ($205.11) |
| Tax (9.3%) | ($95.38) |
| Prior payment | ($30,920.37) |
| **ACV PAYMENT #2** | **$5,985.54** |

The correspondence accompanying the supplemental payment explained that, "[u]pon completion of the repairs the overhead and profit, along with the recoverable depreciation will be issued pending review of the repairs." (Decl. May, Ex. 15 at BAL 133). The correspondence enclosed the revised estimate and was copied to Collazo. (*Id.*) Collazo denies receiving copies of either letter from Balboa to Financial Freedom despite the fact that she took exception to the

---

[5] This chart is offered to address allegations of improper payment contained in Plaintiff's Motion for Partial Summary Judgment. (Dkt. # 23, 5:9-15 and 14:14-16).

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1    scope of repairs.[6] (Decl. May, Ex. 1, 92:4-19).

2         Balboa paid Financial Freedom a total of $36,905.91 with an additional $7,966.35

3    available for depreciation, and overhead and profit.  (Decl. May, Ex. 15).  Financial Freedom

4    released funds to Collazo at its discretion; a total of $29,708 in the form of the following

5    payments: $10,449.99 on August 11, 2010; $9,000.00 on October 6, 2010; $5,440.35 on

6    November 18, 2010; $,4,818.39 on April 23, 2012.  (Decl. May, Ex. 16).  On January 5, 2012,

7    Financial Freedom wrote to Collazo complaining that they had contacted her numerous times to

8    assist with completing repairs but "no progress on repairing the property has been made." (Decl.

9    May, Ex. 17).  Collazo denies Financial Freedom tried to contact her. (Decl. May, Ex. 1, 120:8-

10   14).  This same letter noted that the difference between what was paid by Balboa to Financial

11   Freedom and what Financial Freedom had released to Collazo ($24,890.34) "is to be utilized

12   solely for completing repairs to your property". (Decl. May, Ex. 17).  Financial Freedom

13   requested that Collazo call to advise as to the status of repairs. (*Id.*)

14        There was no further activity on the claim for over three months, until January 21, 2011,

15   when Mr. Gauthreaux received a phone call from Financial Freedom indicating Collazo had a

16   bid in the amount of $80,000. (Decl. May, Ex. 6 at BAL 056).  The following months involved

17   multiple repeated efforts by Mr. Gauthreaux and Mr. Perryman to work with Collazo on her

18   claim seeking supplemental payment. (Decl. May, Ex. 18).  Mr. Perryman tried calling Collazo

19   and left her several voice messages on January 27, 2011, January 31, 2011, and February 9,

20   2011. (*Id.*).  On March 2, 2011, Mr. Perryman was finally able to get in touch with Collazo. (*Id.*).

21   In that call, Mr. Perryman requested copies of Collazo's out of pocket expenses, including

22   invoices, receipts, etc. (*Id.*).  Collazo first said that she had some cancelled checks; she then

23   stated that she gave everything to Mr. Gauthreaux; and finally she stated that she was going to

24

25   ─────────────
     [6]      In this regard, Collazo provides conflicting sworn testimony.  In her deposition testimony offered on
26   February 7, 2014, Collazo testified that she never received any estimates from Balboa explaining payment.
     However, in her Declaration filed in support of her Motion for Partial Summary Judgment, she testified that she had
     received the estimates. (Dkt. #23, 23:6-10).

     Page | 6  DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
              SUMMARY JUDGMENT                                              111i151

1   have her contractor fax the requested documents. (*Id*.).

2       When no documents had been received the following week, Mr. Perryman called Collazo

3   on March 10, 2011 to follow up. (*Id*.).  Collazo did not answer the phone, so he left a message.

4   (*Id*.).  In the following month, absolutely no information was provided by Collazo.  On April 1,

5   2011, Mr. Perryman called Collazo to follow up and left another voice message. (*Id*.).  On

6   April 4, 2011, Mr. Perryman was able to make contact with Collazo. (*Id*.).  In that call, Collazo

7   requested that Mr. Perryman call her attorney, Justin Bristol.[7] (*Id*.).  That same day, Mr.

8   Perryman contacted Mr. Bristol; however, Mr. Bristol did not have any information on the claim

9   and did not have any receipts or invoices from Collazo. (*Id*.).  It was noted that Mr. Bristol would

10  review the claim with Collazo and would follow up with Mr. Perryman. (*Id*.).  Mr. Perryman

11  called Mr. Bristol and left several messages over the following weeks, to no avail. *Id*. (*Id*.).  On

12  May 6, 2011, Mr. Bristol called to advise that he had received documents from Collazo and

13  would e-mail those documents to Mr. Perryman. (*Id*.).

14      Despite more e-mails and phone calls to follow up on this representation, Mr. Perryman

15  did not receive any documents until June 13, 2011, over three months after Mr. Perryman's

16  initial request and over five months since Balboa had re-opened the claim. (Decl. May, Ex. 19)

17  As indicated in the e-mail correspondence from Mr. Bristol to Mr. Perryman, the only enclosed

18  document was an invoice from Full Spectrum EC, in the amount of $5,060.59. (Decl. May, Ex.

19  20).  Being that Balboa issued payments exceeding $36,905, Mr. Perryman requested additional

20  information to support Collazo's demand for more money. (Decl. May, Ex. 18).  On July 7,

21  2011, Mr. Bristol advised Mr. Perryman that he asked Collazo to provide him with invoices and

22  receipts for the money spent to date, and that he had given her 30 days to get those documents

23  ///

24  ///

25

26  [7]   In her deposition testimony, Collazo denied even retaining Justin Bristol as her counsel on this claim.
(Decl. May, Ex. 1, 96:19 - 97:1).

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1    together. (*Id.*).  Almost a month later, on August 3, 2011, Mr. Bristol told Mr. Perryman that he

2    was withdrawing representation of Collazo. (*Id.*).

3         On August 16, 2011, Mr. Bristol e-mailed Mr. Perryman a copy of an invoice from

4    "Concrete Patch & Repair Construction and Rehab," which reportedly itemized expenses for

5    work that had been done to date. (Decl. May, Ex. 21).   According to Mr. Bristol, this invoice

6    "itemizes expenses for work that has been done to date." (*Id.*).  This invoice states at the beginning

7    that "This is a bill for tear out, clean up, decontamination, restoration/repair from fire damage."

8    (*Id.*).  In that e-mail, Mr. Bristol confirmed his withdrawal of representation of Collazo. (*Id.*).

9         Mr. Perryman came to learn that the invoice was from Collazo's son Randy's company.

10   (*Id.*).  Because it contained no measurements or quantities to support the amounts charged or

11   allegedly paid, Mr. Perryman scheduled a re-inspection at the property to meet with Randy to

12   review the work done to date and the amounts alleged over and above his estimate. (*Id.*).

13        On September 2, 2011, Mr. Perryman went to the property for the scheduled re-

14   inspection with Collazo's son Randy; however, Randy never showed up. (Decl. May, Ex. 18).

15   Mr. Perryman walked through the property with Collazo and noted that the repairs that had been

16   done were different than the specification and scope previously agreed to. (Decl. May, Ex. 18

17   and 22).  Over the following months, Mr. Perryman made several attempts to do a walk-through

18   of the property with Randy to reconcile the "Concrete Patch and Repair" bill, all to no avail.

19   (Decl. May, Ex. 18 and 23).

20        Collazo alleges that it was Mr. Perryman and Mr. Geautraux who failed to return her

21   repeated phone calls.  (Decl. May, Ex. 1, 102:8 - 103:16).  When asked if Collazo kept track of

22   her attempts to call Mr. Perryman and Mr. Geautraux she responded "I probably wrote it down

23   on an envelope or a Pee Chee." (*Id.*).  When asked if she still had that envelope she responded "I

24   haven't gone out of my way to look for the envelope.  No." (*Id.*). "I've been too busy"; but

25   ///

26   ///

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1  nobody (including her counsel) had asked her to look for that envelope or Pee Chee showing that

2  she had actually been trying to contact Balboa. (*Id.*).

3      Over a year after Balboa requested documentation in support of her claims, Balboa

4  received a letter of representation, dated April 3, 2012, from the Law Offices of Michael T.

5  Watkins requesting a copy of the policy. (Decl. May, Ex. 24).  On April 25, 2012, Collazo filed

6  an IFCA complaint with an enclosed estimate in the amount of $348,605.73 from the "Advocacy

7  Oriented Business Group" Aspirant Consulting. (Dkt. #23-2, 56-57; Dkt. #23-1, 2-65).  This

8  Aspirant estimate, dated April 11, 2012 (almost two years after the fire), makes no mention of

9  the work already performed by Collazo's son Randy which, according to Randy's invoice, is the

10  entire "bill for tear out, clean up, decontamination, restoration/repair from fire damage."[8]

11      In correspondence dated May 14, 2012 to Mr. Watkins, Balboa responded to the issues

12  contained in Collazo's IFCA complaint and explained that the $348,605.73 estimate contained

13  items, repairs and fees not related to this loss. (Dkt. #23-2, 59-60).  At that time, the claim was in

14  a pre-litigation posture and was assigned to defense counsel.

15      Collazo testified that she hired workers to do repairs and has spent more than $24,000 on

16  repairs to her house.  (Decl. May, Ex. 1, 52:11-15).  In the years following the fire, Collazo has

17  not produced a single receipt, bank statement, cancelled check, invoice, document, or testimony

18  reflecting how *any* portion of the insurance proceeds has been applied to repairs of the damage

19  related to the fire.

20      Collazo contends that she obtained written estimates from four contractors and verbal

21  estimates from two others who inspected the damage. (Dkt. #23 5:17 - 6:2).  However, Collazo

22  testified she threw all four written estimates away and cannot remember the names of any of the

23  contractors who allegedly wrote the estimates.  (Decl. May, Ex. 1, 87:20 - 88:3; 90:11-13).  She

24  testified she threw the other written estimates away because she had received only $9,000 from

25

26  [8]      Aspirant Consulting and its estimator Bernie Williams has apparently gone missing and is unavailable.
(Dkt. #15, 7:4-8).

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1  Financial Freedom (Decl. May, Ex. 1, 88:9-19).  She never told her son Randy, the contractor,

2  that she obtained these estimates and she did not ask Randy for a recommendation. (Decl. May,

3  Ex. 1, 90:11 – 93:21.)  She also never produced an estimate from Frank & Son, who was present

4  at the September 2, 2010 inspection.

5     In her Motion, Collazo posits that she and her family are still living in a fire-damaged

6  house and that it is "almost certain" that mold has grown inside the walls and floors. (Dkt. #23,

7  11:4-12).  Balboa tendered over $36,000 to its insured, Financial Freedom, to remedy the

8  damages caused by the fire.  Despite the receipt of thousands of dollars, Collazo has failed to

9  protect the property from further damage.  She has failed to make reasonable and necessary

10 repairs and she has failed to keep an accurate record of repair expenses.  Irrespective of the

11 blatant disregard for her property and the responsibilities under the reverse mortgage and the

12 subject policy, Collazo requests this Court to award her $348,600 and to find that Balboa acted in

13 bad faith.

## III. LEGAL AUTHORITY AND ARGUMENT

15 **A.  Standard for denying Plaintiff's Motion for Partial Summary Judgment**

16    A grant of summary judgment is inappropriate if there is any genuine issue of material

17 fact. *Waggy v. Spokane County*, 594 F.3d 707, 710 (9th Cir. 2010).  If the nonmoving party

18 produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats

19 the motion. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th

20 Cir. 2000).  As set forth below, Balboa demonstrates several issues of material fact.

21 **B.  Collazo is Not a Third-Party Beneficiary of the Policy**

22    Washington law is well established regarding the circumstances under which a third-

23 party beneficiary contract is created.  To establish that Collazo has standing as a third-party

24 beneficiary to the policy, Collazo must allege and prove that the parties intend that the promisor

25 assume a *direct obligation* to the intended beneficiary at the time they enter into the contract.

26 *Postlewait Const., Inc. v. Great American Ins.,* 41 Wn.App. 763, 765 (1985).

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

///

In Washington, "[a] third-party beneficiary is one who, though not a party to the contract, will nevertheless receive direct benefits therefrom. In determining whether or not a third-party beneficiary status is created by a contract, the critical question is whether the benefits flow directly from the contract or whether they are merely incidental, indirect or consequential." 17 Am.Jur.2d Contracts § 305 (1964). An incidental beneficiary acquires no right to recover damages for non-performance of the contract. Restatement of Contracts § 147 (1932). "It is not sufficient that the performance of the promise may benefit a third person, but that it must have been entered into for his benefit, or at least such benefit must be the direct result of performance and so within the contemplation of the parties." 17 Am.Jur.2d Contracts § 304 (1964). "The question whether a contract is made for the benefit of a third person is one of construction. The intention of the parties in this respect is determined by the terms of the contract as a whole construed in the light of the circumstances under which it was made." *McDonald Const. Co. v. Murray*, 5 Wn.App. 68, 70 (1971).

In this action, nothing in the policy indicates or states that the contract was intended to primarily and directly benefit Plaintiff. Instead, the opposite is true. The policy makes clear that the named insured, and only intended beneficiary, is Financial Freedom. The Insuring Agreement contains the following language:

> ***INSURING AGREEMENT***
> Balboa Insurance Company, hereinafter referred to as the "Company" in consideration of the premium and subject to the limits of liability, exclusions, conditions and other terms of this Policy, agrees to indemnify the Named Insured and its legal representatives, hereinafter referred to as the "Insured," for any amount which the Insured may be entitled to recover as respect to existing mortgages for which the required insurance policies have not been delivered to the Insured on or before the expiration or cancellation of the existing insurance. The mortgagor of the property covered hereunder, hereinafter referred to as the "Borrower," shall be considered an additional insured with respect to any residual amounts of insurance over and above the insurable interest of the Insured in said property.

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

***

***DEFINITIONS***
In this form, **you** and **your** refer to the **named insured** shown in the Declarations. **Borrower** refers to the Mortgagor of the specific property insured under this form. **We**, **us**, and **our** refer to the Company providing this insurance.

Interpreting a borrower's status under an almost identical lender-placed policy, this Court has held that a borrower is *not* a third-party beneficiary. *See Childress v. Liberty Mutual Fire Ins. Co.*, C10-059RSL, 2011 WL 1832709(W.D. Wash., May 12, 2011).

In *Childress*, plaintiffs/borrowers alleged bad faith claims against Liberty Mutual as third-party beneficiaries due to their contingent loss payee status under the policy. *Id.* at 1. When plaintiffs' lender became aware that plaintiffs' homeowners' insurance had been cancelled, the lender sent two letters to plaintiffs reminding them of their obligation to maintain homeowners' insurance and requesting that they immediately provide current policy information. *Id.* When plaintiffs failed to respond, the lender obtained a lender-placed policy from Meritplan and informed plaintiffs that the lender placed coverage "will only protect Countrywide Home Loan's interest in your property" and that in the event of a loss, "all payments will be due to Countrywide Home Loans." *Id.* Additionally, the policy explicitly provided that a borrower is only entitled to a contingent loss payment in the event that the repair costs exceeded the amount owed by the borrower at the time of the loss. *Id.*

The property was damaged by fire during the policy period and MeritPlan issued payment to the lender, which plaintiffs argued was insufficient. *Id.*

MeritPlan moved for summary judgment, arguing that plaintiffs were not third-party beneficiaries under the policy and therefore could not assert bad faith claims against MeritPlan. *Id.* The court examined the policy and determined that plaintiffs were not third-party beneficiaries because the contracting parties did not intend to create a third-party beneficiary contract. *Id.*

"To determine whether a party is a third party beneficiary, the contract must be examined, and 'both contracting parties must intend that a third party beneficiary

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

contract be created.' *See, e.g., Postlewait Constr., Inc. v. Great Amer. Ins. Companies,* 106 Wash.2d 96, 99, 720 P.2d 805 (1986). In this case, neither

contracting party intended to create a third party beneficiary contract. Only Countrywide is named as the insured. In their discovery responses and first amended complaint, plaintiffs concede that they were notified that the Policy did not provide coverage for them. The contract explicitly states that the borrowers are only entitled to a contingent loss payment in the event that the repair costs exceeded the amount owed by the borrowers at the time of the fire." *Id.* at 2.

Collazo argues that she is a third-party beneficiary because payment of a claim under the policy would necessarily and directly benefit her, specifically, that she owned the property (subject to Financial Freedom's mortgage) and would benefit from any repairs paid for by Balboa. (Dkt. # 23, 12:18-20). In *Childress*, this Court addressed the same argument in the same context and held that the borrower is *not* a third party beneficiary. *Id.* at 3.

"Plaintiffs also argue that they are third party beneficiaries because MeritPlan's performance of its duties would necessarily and directly benefit them. If that factor was dispositive, however, mortgagees and mortgagors would always be third party beneficiaries of each other's insurance contracts, which is not the case. *See* Lee R. Russ & Thomas H. Segalla, Couch on Insurance § 40:20, at 40–30 to 40–31 (3d ed.2000) (explaining that mortgagors and mortgagees have separate, insurable interests in property; 'Absent a covenant to insure for the benefit of the other party, a policy secured by either a mortgagor or mortgagee to protect his or her own interest does not benefit the other party'). The fact that plaintiffs reimbursed BAC for the premiums is irrelevant for two reasons: plaintiffs did not pay premiums to MeritPlan, and the contracting parties' intent controls. *See, e.g., Postlewait,* 106 Wash.2d at 99, 720 P.2d 805; *see also Kilson v. Am. Road Ins. Co.,* 345 So.2d 967, 969 (1977) (applying Louisiana law; holding that plaintiff had no cause of action against an insurer; the fact that the insured charged plaintiff for the premiums does not create any sort of legal relationship between plaintiff and the insurer)." *Id.*

Collazo is not a third-party beneficiary under the policy, irrespective of whether damages exceed Financial Freedom's interest in the property on the date of loss.

In *Lumpkins v. Balboa Ins. Co.*, 812 F.Supp.2d 1280 (N.D. Okl. 2011), the U.S. District Court for the Northern District of Oklahoma analyzed the standing of a borrower under a lender-placed policy to bring an action for breach of contract and bad faith against the insurer. The issue presented was whether the plaintiffs/borrowers may be deemed third-party beneficiaries of

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424 Facsimile: 503-227-2535

the policy between the lender and the insurer. The court reviewed the contract as a whole to determine the intent of the contracting parties, as to whether the contract exhibited the intent to benefit the third-party. The court analyzed the declarations, the insuring agreement, the loss payment provision, the definitions, and the Notice of Insurance (similar to the Certificate of Coverage Placement in this case). These provisions and portions of the contract are almost identical to those at issue. Addressing whether plaintiffs' "potential" or contingent right to payment was sufficient to render plaintiffs as third-party beneficiaries, the court examined the loss payment provision. The court found that in the event that the amount of loss exceeds the lender's insurable interest in the property, payment would come from the lender from proceeds paid to it by the insurer that exceed the lender's insurable interest in the property. As such, despite plaintiffs' potential right and entitlement to proceeds paid to the lender under the language of the policy, the insurer does not have any contractually conferred decision-making power as to whether the lender makes such payment. Based on this reasoning, the court found that the plaintiffs were not third-party beneficiaries of the lender-placed policy and dismissed plaintiffs' bad faith claims against the insurer.

In *Hall v. Associated Intern. Ins. Co.*, 2011 WL 3299104 (D. Kan. 2011), the court found the lender-placed policy was intended to protect only the lender's interest in the property, which was common practice with lender or forced-placed policies, despite the fact that plaintiff certainly benefited from the Master Policy discharging his obligations under the mortgage. The Court held this indirect benefit classified the borrower as a mere incidental beneficiary of the lender-placed policy, which does not entitle him to sue upon it as a third-party beneficiary.

In *Simpson v. Balboa Ins. Co.*, 2009 WL 1291275 (S.D. Miss. May 7, 2009), the insurer moved for summary judgment arguing that the plaintiff/borrower was merely an incidental beneficiary under the policy and receives a benefit under the policy only if very specific conditions are met; i.e., if coverage in excess of the mortgage balance exists and a claim for damages exceeds that mortgage balance. The court held that the plaintiff failed to provide any

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1    evidence of a legal obligation or duty to him on the part of the insurer created by the insurance

2    policy contract.  The court concluded that any benefit to the plaintiff under this contract would

3    be merely incidental, which is insufficient to confer third-party beneficiary status.

4         Based on the controlling and persuasive precedent, Collazo is not a third-party

5    beneficiary to this policy as a matter of law.

6    **C.    Collazo Does Not Have Standing to Sue Balboa for Bad Faith**

7         As demonstrated in section B above, Collazo's contingent and incidental right to residual

8    policy proceeds - if any - as an "additional insured" does not confer third-party beneficiary

9    status.

10        Collazo argues that the policy "explicitly designated that Collazo was an additional

11   insured." (Dkt. #25, 12:21 - 13:1).  This must be examined within the context of the insuring

12   agreement that expressly limits this status.  The policy provides that Collazo is "an additional

13   insured with respect to any residual amounts of insurance over and above the insurable interest

14   of the Insured in said property."  The express contractual language does not simply name Collazo

15   as an additional insured to all the terms and provisions of the policy.  Rather, the policy

16   expressly, unambiguously, and specifically limits the scope under which Collazo may be

17   considered an additional insured and that scope is limited to "any residual amounts of

18   insurance."

19        Collazo relies upon *Escalante v. Sentry Ins. Co.*, 49 Wn.App. 375 (1987) to support her

20   argument that she has standing to sue Balboa for Insurance Code Violations. (Dkt. # 23, 13:7-

21   24).  However, *Escalante* does not confer such standing in the context of this action.  The facts of

22   *Escalante* involve an automobile liability insurance policy and an injured passenger. *Escalante*,

23   49 Wn.App. 375.  *Esclante* is not analogous to this action and is substantively distinguishable.

24   This action does not involve an automobile liability policy.  This action involves a lender-placed

25   property policy.  The only purpose citing *Escalante* serves Collazo in her Motion for Partial

26   Summary Judgment is to support the argument that Washington recognizes the right of third-

Page | 15  DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
         SUMMARY JUDGMENT                                                  111i151

1    party beneficiaries to bring bad faith claims against insurers. However, Collazo is not a third

2    party beneficiary to this policy and has cited no Washington authority to support her argument

3    for standing in this action.

**D.    Collazo's Arguments that Balboa Breached a Duty of Good Faith and Violated the Insurance Fair Conduct Act are Baseless, Lack Foundation, and Raise Issues of Fact That Are Not Appropriate for Summary Judgment**

6        Collazo argues that Balboa's actions were unreasonable, frivolous, or unfounded and as

7    such, Balboa breached its duty of good faith to Collazo. (Dkt # 23, 14:17 - 15:4).

8    Notwithstanding the legal argument contained in Section B above that Collazo does not have

9    standing to sue Balboa for bad faith, Collazo fails to establish sufficient undisputed facts that

10    Balboa's actions were unreasonable, frivolous, or unfounded.

11        Collazo argues that no Balboa employee ever inspected the damage and that Balboa

12    never retained a licensed contractor to evaluate the cost of repairs. (Dkt. #23, 14:6-13). However,

13    Collazo does not cite to one single legal authority creating such a duty or obligation. Balboa

14    hired an independent adjuster, Dean Perryman of Paragon Claims, Inc., to be the "eyes and ears

15    on the claim." (Decl. May, Ex. 11, 54:2-6; 91:21-24). As an independent adjuster, Mr. Perryman

16    was assigned to investigate the claim and inspect the loss. (*Id.* at 54:2-6, 92:1-3). Mr. Perryman

17    maintained a record of this and provided frequent reporting to Balboa regarding his investigation.

18    (Decl. May, Ex. 25).

19        Collazo argues that Balboa "ignored Collazo's repeated complaints that Perryman's

20    estimate was insufficient." (Dkt #23, 14:7). As demonstrated in Section I above, Balboa did not

21    ignore Collazo's "complaints," but rather actively pursued Collazo regarding these "complaints"

22    to no avail. This included over twenty-five phone calls to Collazo and her former attorney,

23    Justin Bristol, multiple e-mails and three separate inspections of the property. To this date,

24    Collazo has not provided a single document reflecting repairs to the fire damaged property.

25    (Decl. May, Ex.1, 77:21 - 78:11).

26        Further, Collazo alleges that "Balboa failed to pay the full actual cash value of

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424 Facsimile: 503-227-2535

1   Parryman's final estimate." (Dkt. #23, 14:14-16).  This is not accurate and simply reflects

2   Collazo's failure to review the estimates that support the payments issued by Balboa, as well as

3   the documents produced in discovery.  Collazo alleges that Balboa has only paid $36,900, but

4   that she should have been paid approximately $43,000 based on Mr. Perryman's supplemental

5   estimate. (Dkt. #23, 5:9-15).

6          First, to clear the record, all payments issued on this claim have been issued to the named

7   insured, Financial Freedom. (Decl. May, Ex. 12 and 15).  Any payments on this claim issued to

8   Callazo were issued by her lender, the named insured Financial Freedom. (Decl. May, Ex. 16). In

9   fact, it appears that to this date, $7,197.18 remains in a restricted escrow account with Financial

10  Freedom because Collazo has failed to demonstrate that at least 90% of the damages related to

11  the fire have been repaired. (*Id.* at PLF 404).

12         With regards to the payments issued by Balboa, Collazo is correct that approximately

13  $36,900 has been paid to Financial Freedom.  Balboa explained in correspondence

14  accompanying payment that O&P was withheld from payment, as was recoverable depreciation.

15  (Decl. May, Ex. 12).  Initially, O&P was $5,919; however, after the supplemental calculation of

16  adjusted losses, the O&P increased to $6,940.80. (Decl. May, Ex. 14 at BAL 147).  This amount

17  was withheld from payment pending receipt of a work authorization from a general contractor as

18  it reflects the amount charged by a general contractor for Profit & Overhead and would be

19  payable on the loss only if a general contractor were used to repair the property.  If Collazo or

20  her counsel actually reviewed the estimates supporting payment and the correspondence cc'd to

21  her and reproduced in discovery, she would not argue that Balboa failed "to pay the full amount

22  of the actual cash value in Perryman's estimate." (Dkt # 23, 15:1-2).

23         Collazo's contention that Balboa's actions were unreasonable, frivolous or unfounded

24  lack any factual foundation and rest upon her belief that Balboa had a duty to personally inspect

25  the property, of which Balboa had no legal or ethical obligation to do.  As such, Collazo's

26  argument that Balboa breached its duty of good faith must be rejected.

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1    Collazo relies on the same baseless arguments for her assertion that Balboa has violated

2    the Insurance Fair Conduct Act ("IFCA").  Collazo argues further that Balboa unreasonably

3    denied the full payment of the cost of repairing the damage to the property and relies upon the

4    $348,000 estimate prepared by Bernie Williams of Aspirant Consulting. (Dkt. #23, 15:13-18).

5    Balboa made every effort to work with Collazo during and after the loss to the property, which

6    included three site inspections by Mr. Perryman.  Balboa received the Bernie Williams estimate

7    after Collazo filed her IFCA complaint in April of 2012, almost two years after the date of loss.

8    The Bernie Williams estimate of $348,000 virtually provides for a complete rebuild of the

9    property.  As is evident in the Fire Investigation Report from the City of Tacoma Fire

10   Department (Decl. May, Ex. 5), as well as the photographs taken immediately after the loss by

11   Mr. Perryman (Decl. May, Ex. 10), the property was not completely destroyed by fire and does

12   not require a complete rebuild of the structure.  Balboa had no legal or ethical obligation to

13   consult with Mr. Williams regarding his findings. (Dkt #23, 15:16-17).

14   Collazo wasn't sure if she had seen the Aspirant Consulting estimate at any time before

15   her deposition (Decl. May, Ex. 1, 115:19 – 25).  When handed a copy of their estimate, she said

16   the name of the company sounded "vaguely familiar".  (*Id.* at 73:11-16).

17   Nevertheless, this is an issue of fact that is not appropriate for summary judgment.

18   **E.    Collazo Does Not Have Standing to Demand Appraisal**

19   "'[I]t is the duty of the court to search out the intent of the parties by viewing

20   the contract as a whole and considering all of the circumstances surrounding the transaction."

21   *Boeing Airplane Co. v. Firemen's Fund Indem.* Co., 44 Wash.2d 488, 496, 268 P.2d 654 (1954),

22   overruled on other grounds by *Berg v. Hudesman*, 115 Wash.2d 657, 801 P.2d 222 (1990).  In

23   interpreting a policy, the court's primary goal is to ascertain the parties' intent at the time the

24   contract was executed. *Id.* at 663. "[E]xtrinsic evidence is admissible as... an aid in ascertaining

25   the parties' intent." *Id.* at 667.  Contract interpretation is a matter of law. *Wash. Pub. Util Dists.'*

26   *Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam County,* 112 Wash.2d 1, 10, 771 P.2d 701 (1989).

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1    A court may also consider whether there was another type of insurance that would have covered

2    the loss. *See Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 123 Wash.2d 678, 688, 871 P.2d

3    146 (1994) (explaining that courts consider the availability of an alternative and/or more specific

4    endorsement to be "highly significant").

5        Here, the relevant policy provisions read as follows:

6

*CONDITIONS*

7    *****

**8. Appraisal**

8    If **you** and **we** fail to agree on the amount of loss, either may demand an appraisal
of the loss. In this event, each party will choose a competent appraiser within 20

9    days after receiving a written request from the other.  The two appraisers will
choose an umpire.  If they cannot agree upon an umpire within 15 days, **you** or **we**

10   may request that the choice be made by a judge of a court of record in the state
where the Described Location is located.  The appraisers will separately set the

11   amount of loss. If the appraisers submit a written report of an agreement to **us**, the
amount agreed upon will be the amount of loss.  If they fail to agree, they will

12   submit their differences to the umpire.  A decision agreed to by any two will set
the amount of loss.[9]

13

14   (Decl. May, Ex. 4 at PLF 238, emphasis in original)

15   *****

*DEFINITIONS*

16   In this form, **you** and **your** refer to the **named insured** shown in the Declarations.
**Borrower** refers to the Mortgagor of the specific property insured under this

17   form. **We**, **us**, and **our** refer to the Company providing this insurance.

18   (*Id.* at PLF 232, emphasis in original)

19       The Declarations of the policy identify Financial Freedom as the Named Insured and

20   Collazo as the Borrower. (*Id.* at PLF 220).  The policy unambiguously confers the right to

21   demand appraisal to the insured, Financial Freedom.  However, the policy confers no such right

22   to the borrower.  The borrower is not an insured under the policy.

23

24

25   [9]     Collazo asserts that the policy contains two appraisal provisions. (Dkt. #23 15:20-21).  While this is correct, only one
appraisal provision is at issue.  The policy contains two insurance forms: (1) the Residential Property Fire Insurance Form (BAL

26   083-092); and (2) the Commercial Property Fire Insurance Form (BAL 093-099).  The Residential Form contains the appraisal
language quoted above.  The appraisal provision contained in the Commercial Property Form is not relevant to this action and not
at issue.

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424 Facsimile: 503-227-2535

1    The Certificate of Coverage Placement issued to Collazo with the policy advised Collazo

2    that the policy was a lender placed policy with limited coverage to protect Financial Freedom's

3    interest in the property. (Decl. May, Ex. 3).  Further, it clearly provided that Collazo could obtain

4    insurance of her own choosing at any time that would likely be less expensive and provide

5    broader coverage for her interests. (*Id.*).

6    Citing to WAC 284-20-010, Collazo argues that Washington law requires all insurance

7    policies to contain "an appraisal provision to protect *all* the insureds, including the 'additional

8    insured' Borrower." (Dkt. #23, 16:1).  This is not what the law requires.  Rather, WAC 284-20-

9    010 requires that insurers use the language contained in the 1943 New York Standard Fire

10   Insurance Policy, or in the alternative, to provide terms, conditions and coverages that are not

11   less favorable to the insured than the "standard fire policy."

12   The appraisal language of the 1943 New York Standard Fire Insurance Policy reads as

13   follows:

14   *APPRAISAL*
     In case the insured and this Company shall fail to agree as to the actual cash value
     or the amount of loss, then, on the written demand of either, each shall select a
     competent and disinterested appraiser and notify the other of the appraiser
     selected within twenty days of such demand.  The appraisers shall first select a
     competent and disinterested umpire; and failing for fifteen days to agree upon
     such umpire, then, on request of the insured or this company, such umpire shall be
     selected by a judge of a court of record in the state in which the property covered
     in located.  The appraisers shall then appraise the loss, stating separately actual
     cash value and loss to each item; and, failing to agree, shall submit their
     differences, only, to the umpire.  An award in writing, so itemized, of any two
     when filed with this company shall determine the amount of actual cash value and
     loss.  Each appraiser shall be paid by the party selecting him and the expenses of
     appraisal and umpire shall be paid by the parties equally. [10] (Dkt. #23-2, 68:123-
     140)

----

[10]    The "standard fire policy" also contains a provision called "Mortgagee Interests and Obligations." This is a standard
provision contained in homeowners' insurance policies to protect the lender's interest in the property. Because the subject policy
is *not a homeowner's policy*, but rather a *lender-placed* policy, it does not contain this provision. The Mortgagee Interests and
Obligations" provision is not necessary in a policy designed to protect the lender's interests as the insured under the policy. By
Collazo's interpretation and reading of WAC 284-20-010, the subject policy would violate WAC 284-20-010 for failure to
include this provision. However, because the policy is *not* a homeowner's policy, it is not legislatively intended to comport with
the terms of a homeowner's property policy.

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1    As is evident by the quoted "standard" appraisal provision, *the insured* has the right to

2   demand appraisal - not *all* insureds, not contingent *additional insureds*, and not borrowers.  In

3   the "standard" appraisal provision, *the* insured may demand appraisal. In the relevant appraisal

4   provision of this policy, *the* insured Financial Freedom may demand appraisal.

5    Collazo is not *the* insured.  Rather, Collazo "shall be considered an additional insured

6   with respect to any residual amounts of insurance over and above the insurable interest of *the*

7   *Insured* in said property." (Decl. May, Ex. 4, at PLF 230, emphasis added).  Even her contingent

8   status as an *additional insured* is expressly and specifically limited and does not confer upon her

9   the other rights and obligations available to *the insured* under this policy.

10   Balboa's policy complies with WAC 284-20-010.  It confers the right to demand

11   appraisal to *the insured*, Financial Freedom.  Collazo is not *the insured* and would not have

12   standing to demand appraisal under this policy or the "standard fire policy."

13    As a final argument, Collazo asserts that the policy is ambiguous and must be interpreted

14   in her favor; however, Collazo does not reference a specific term or policy provision that is

15   ambiguous. (Dkt. #23. 18:1-10). "Apparent ambiguities can sometimes be resolved by reading

16   the policy as a whole. *Queen City Farms,* 126 Wash.2d at 74, 882 P.2d 703, 891 P.2d 718; *see*

17   *also Boeing,* 44 Wash.2d at 496, 268 P.2d 654 ('[I]t is the duty of the court to search out the

18   intent of the parties by viewing the contract as a whole and considering all of the circumstances

19   surrounding the transaction.'); *Kent Farms, Inc. v. Zurich Ins. Co.,* 140 Wash.2d 396, 400, 998

20   P.2d 292 (2000) (explaining that courts will interpret policy exclusions in the context of the

21   whole policy).  A court, however, may not interpret a policy in such a way that it creates

22   nonexistent ambiguities that result in the policy being construed in favor of the insured. *See, e.g.,*

23   *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 80 Wash.2d 38, 44, 491 P.2d 641 (1971);

24   *McDonald v. State Farm Fire & Cas. Co.,* 119 Wash.2d 724, 734, 837 P.2d 1000 (1992)

25   (recognizing that just because the policy language is complicated or confusing does not mean the

26   ///

Page | 21  DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT                                                111i151

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1  provision in question is ambiguous)." *Int'l Marine Underwriters v. ABCD Marine, LLC*, 313

2  P.3d 395, 400 (Wash. 2013).

3      In construing the policy as a whole, as well as the extrinsic and accompanying Certificate

4  of Coverage Placement, it is evident that the policy expressly confers certain rights and

5  obligations to the insured, the borrower, and the insurer.  Throughout the policy, the intent of the

6  contracting parties is clearly delineated and to the extent that the borrower had rights or

7  obligations, such is expressly provided in the policy.[11]

8      The policy unambiguously provides the insured, Financial Freedom, the right to demand

9  appraisal in conformance with the requirements of WAC 284-20-010.  Collazo's argument that

10  she has a right to demand appraisal fails as a matter of law.

11  **F.     Collazo Fails to Establish the Elements Necessary for Promissory Estoppel**

12      The prerequisites to the application of the doctrine of promissory estoppel are: (1) A

13  promise which (2) the promisor should reasonably expect to cause the promisee to change his

14  position and (3) which does cause the promisee to change his position (4) justifiably relying

15  upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the

16  promise. *Williams Fruit Co. v. Hanover Ins. Co.*, 3 Wash.App. 276, 281-82 (1970).

17      Collazo's claim fails to establish the existence of the first element, the promise.  Balboa

18

19  ---

  [11]  *See e.g.* Decl. May, Ex. 4, PLF 237-239

20  CONDITIONS
4. Your Duties After Loss

21      In case of a loss to covered property, **you** and the **borrower** must see that the following are done:
      a.  Give prompt notice to **us** or **our** agent;

22        b.  (1) Protect the property from further damage;
          (2) Make reasonable and necessary repairs to protect the property; and
          (3) Keep an accurate record of repair expenses

23  *****

12. Loss Payment

24      **We** will adjust all losses with **you**. **We** will pay **you** unless some other person is names in the

25  Declarations of this form or is legally entitled to receive payment. Loss will be payable 30 days after we
receive **your** proof of loss and:
      a.  Reach an agreement with **you**;

26        b.  There is an entry of a final judgment; or
      c.  There is a filing of an appraisal award with **us**.

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424 Facsimile: 503-227-2535

1    never made any promise to Collazo regarding appraisal or otherwise.  The underlying Complaint

2    does not allege a promise made by Balboa to Collazo with respect to initiating the appraisal

3    process. (Dkt. # 12).  In fact, her Complaint alleges that "Balboa chose not to participate in the

4    appraisal process." (Dkt. #12, 3:4).

5         Additionally, Collazo's claim fails to establish that Balboa's conduct caused her to

6    change her position.  Collazo hired an appraiser months prior to demanding appraisal and

7    incurred approximately $5,000 in fees for the services provided prior to the appraisal demand.

8    (Dkt. #23, 73-82).  Her appraiser continued to work on her claim after it became undisputedly

9    clear that Balboa was not participating in the appraisal process and incurred a minimum of

10   another $5,000. (*Id.*)  Mr. Howsen was working on this claim irrespective of Balboa's

11   participation, as is evident by his invoice and activity log notes.

12        Collazo alleges that she "was charged significant fees by her appraiser due to her reliance

13   on Balboa's apparent willingness to participate in the appraisal process." (Dkt #23, 18:20-21).

14   However, based upon his invoice and activity log notes, Collazo's appraiser, Roger Howsen, was

15   hired by Collazo (or her counsel) in February of 2012 and began working up his bill at that point

16   in time. (Dkt. #23, 72-73).  In fact, Mr. Howsen amassed over 20 hours or at least $5,000

17   working on this claim in the months prior to Collazo's demand for appraisal, dated July 9, 2012.

18   (Dkt 23-2, 65-66, 72-73).  As is evident in his log notes, Mr. Howsen knew as early as

19   November 19, 2012, if not sooner, that Balboa was not engaging in the appraisal process due to

20   Collazo's lack of standing to demand appraisal.(Dkt. #23, 78).  Irrespective of this information,

21   Mr. Howsen worked the file up for an additional 20 hours from November 29, 2012 through

22   December 7, 2013. (Dkt. #23, 73-82).  For some unapparent reason, Mr. Howsen reportedly

23   spent over 40 hours, and charged Collazo over $10,000 for services prior to the appraisal demand

24   and after it was evident that Balboa disputed Collazo's right to appraisal.

25        Notwithstanding, the appraisal provision of the policy dictates that each party bear the

26   cost of their own appraiser.  Specifically, the appraisal provision reads "[e]ach appraiser shall be

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

1   paid by the party selecting him." Even if Collazo had a right to appraisal as she argues, she

2   would be contractually obligated to bear the expense of her own appraiser.

3        Because Collazo has failed to establish that Balboa promised to engage in the appraisal

4   process and because Collazo has failed to establish that she changed her position in some way,

5   Collazo's claim for promissory estoppel fails.

6   **G.    Collazo's demand for "default appraisal judgment" is not grounded in law or**
        **reason and must be denied**

7        In her Motion, Collazo asserts that she is entitled to default appraisal judgment in the

8   amount of $348,605. (Dkt. #23, 3:3-5, 21:3-7). The estimate submitted by Collazo in the amount

9   of $348,605 is in dispute. It was rejected prior to litigation as exceeding the scope of damages

10  related to the fire loss. (Dkt. #23-2, 59-60). Further, the author of the estimate, Bernie Williams,

11  is no longer available as a witness and Collazo has expressed her intention to seek another

12  opinion from another contractor. (Dkt. #15, 7:5-7).

13       Moreover, Collazo sets forth no statutory or case law providing for such a remedy.

14  Neither the policy nor legal precedent establishes a cause of action for default appraisal

15  judgment. No such remedy exists and Collazo has failed to support her request with law or fact.

16                              **IV. CONCLUSION**

17       For the reasons set forth herein, Collazo's Motion for Partial Summary Judgment and the

18  enumerated requested relief therein should be denied.

19       DATED this 10th day of March, 2014.

20                              SMITH FREED & EBERHARD, P.C.

21                              By:   _/s/ Robert S. May_
22                                    Robert Selden May, WSBA No. 36116
                                      Email: rmay@smithfreed.com
23                                    Telephone: 503-227-2424
                                      Of Attorneys for Defendant Balboa
24                                    Insurance Company

25

26

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the <u>10th</u> day of March, 2014, I served the foregoing pleading on:

| | | |
|---|---|---|
| Michael T. Watkins | George W. McLean, Jr. | Joel  B. Hanson |
| WSBA No. 13677 | WSBA No. 14070 | WSBA No. 40814 |
| Law Office of Michael T. Watkins | Law Office of | Law Offices of Joel B. Hanson |
| 2825 Eastlake Ave. E, Ste. 115 |   George W. McLean, Jr. | 2825 Eastlake Ave. E, Ste. 115 |
| Seattle, WA  98102 | 2825 Eastlake Ave. E, Ste. 115 | Seattle, WA  98102 |
| | Seattle, WA  98102 | |
| Email: | Email: | Email: |
| michael@mtwlawfirm.com | gwmclean.attorney@yahoo.com | joel.b.hanson@gmail.com |
| Of Attorneys for Plaintiff | Of Attorneys for Plaintiff | Of Attorneys for Plaintiff |

\_\_X\_\_\_  by electronic means through the Court's Case Management/Electronic Case Filing system on the date set forth above.

\_\_\_\_\_  by emailing to the address above and by mailing a full, true and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the attorney as shown above, the last-known office address of the attorney, and deposited with the United States Postal Service at Seattle, Washington on the date set forth above.

\_\_\_\_\_  by causing a full, true and correct copy thereof to be hand-delivered to the attorneys at the attorneys' last-known office address listed above on the date set forth above.

\_\_\_\_\_  by sending a full, true and correct copy thereof via overnight courier in a sealed, prepaid envelope, addressed to the attorney as shown above, the last-known office addresses of the attorneys, on the date set forth above.

SMITH FREED & EBERHARD, P.C.

By:  \_\_*/s/ Robert S. May*_____
     Robert Selden. May, WSBA No. 36116
     Email:  rmay@smithfreed.com
     Telephone: 503-227-2424
     Of Attorneys for Defendant
     Balboa Insurance Company

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, OR 97204
Telephone: 503-227-2424  Facsimile: 503-227-2535